UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

451 MARKETING, LLC ,
    *Plaintiff*,

v.

NAMCO, LLC,
    *Defendant*.

No. 3:17-cv-01927 (MPS)

**RULING ON MOTION FOR DEFAULT JUDGMENT**

**I.    BACKGROUND**

This case arises out of a written services agreement entered into by Plaintiff 451 Marketing, LLC ("451") and Defendant Namco, LLC ("Namco") whereby 451 agreed to provide consulting services to Namco. ECF No. 1 ¶ 7. Namco failed to appear to defend the case, and 451 moved for entry of default, which the Clerk granted on March 26, 2018. ECF No. 17. 451 moved for default judgment. ECF No. 18. I found that 451 had established Namco's liability for breach of contract but had not provided sufficient information or evidence to support a damages calculation with reasonable certainty, and therefore denied the motion for default judgment without prejudice. ECF No. 43. 451 has now filed a second motion for default judgment. ECF No. 45. I assume familiarity with my ruling on 451's first motion for default judgment, ECF No. 43.

**II.    DISCUSSION**

Because I previously found that 451 has established Namco's liability, ECF No. 43, I address only damages in this ruling. In a motion for default judgment, the plaintiff has the burden of "alleg[ing] details or evidence that would allow the Court to determine damages with reasonable certainty." *Smith v. Wilson*, 2016 WL 11295453, at *2 (D. Conn. Sept. 12, 2016). The Court may not "just accept [the plaintiff's] statement of the damages" as this would not

1

"satisfy the court's obligation to ensure that the damages were appropriate." *Transatlantic Marine Claims Agency, Inc. v. Ace Ship. Corp. Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).  Rather, "damages must be based on admissible evidence." *H. v. Kent Worldwide Mach. Works, Inc.*, 359 Fed. Appx. 206, 207 (2d Cir. 2010); *Trustees of Metal Polishers Loc. 8A-28A Funds v. Prestige Restoration and Maint, LLC*, 986 F. Supp. 2d 159, 164 (E.D.N.Y. 2013) (affirming recommendation of Magistrate Judge to deny motion for default judgment where Plaintiff "failed to provide the requisite, admissible documentation upon which the court could calculate an award of damages.").

451 claims damages from unpaid fees, interest, attorneys' fees, and costs.  I address each of these in turn.

**A.     Unpaid Fees**

451 claims that Namco owes it $180,941.90 in unpaid fees.  ECF No. 45-1 at 1.  451 has submitted accounting records indicating that five invoices submitted to Namco remain outstanding, in whole or in part.  ECF No. 45-1 at 18.

Invoice 5571, dated January 4, 2017, includes a single line item for $30,000 for "Website Design and Development Project."  *Id.* at 20.  The contract between Namco and 451 (the "Agreement") provided for a $30,000 payment on January 4, 2017, matching the date and amount of the invoice.  ECF No. 45-1 at 5.  451's records indicate that Namco remitted a $10,000 payment toward this invoice on April 13, 2017, and that $20,000 remains outstanding.

Invoice 5673, dated March 9, 2017, lists a total amount of $26,662 and includes the following five line items under the heading "Namco Pools – February 2017 Namco Marketing Campaign":

    PPC - $5,500.00
    Ongoing SEO - $9,000.00

2

>     Social Media Management - $3,000.00
>     Account Management - $6,000.00
>     Creative for Digital Support - $3,162.00

*Id.* at 21.

For services performed for the "2017 Namco Marketing Campaign," the Agreement included a "monthly upfront retainer." *Id.* at 6, 14.  The Agreement provided for a credit toward the next month's invoice should 451's hourly fees for that month turn out to be less than the retainer.  *Id.* at 6.  The Agreement also allowed 451 to bill Namco for any excess if its hourly fees for a service exceeded the monthly retainer.  *Id.*

The amounts listed in Invoice 5673 match the amounts listed in the Agreement, which provided for a $9,000.00 monthly retainer for "Ongoing SEO," a $5,500 monthly retainer for "Paid Digital Ad Management,"[1] a $6,000 monthly retainer for account management, a $6,000 monthly retainer for "Creative for Digital Ads," and an $11,000 retainer for "Social Media Management."  *Id.* at 14.  451's accounting records indicate that the entirety of this invoice is outstanding.  *Id.* at 18.

Invoice 5741, dated April 3, 2017, lists a total invoiced amount of $33,600 and includes the following four line items under the heading "Namco Pools – March 2017 Namco Marketing Campaign":

>     PPC - $5,500.00
>     Ongoing SEO - $9,000.00
>     Social Media Management - $13,100.00
>     Account Management - $6,000.00

*Id.* at 22.  The amounts for "PPC," "Ongoing SEO," and "Account Management" match the monthly retainers listed in the Agreement.  *Id.* at 14.  The fee for "Social Media Management"

---

[1] The Court infers that "PPC" refers to "Paid Digital Ad Management," based on the matching amounts and the fact that both are classified as part of the Namco Marketing Plan in the invoice and the Agreement, respectively.

3

exceeds the monthly retainer listed in the agreement by $2,100 ($13,100 vs. $11,000).  *Id*.  451's accounting records indicate that the entirety of this invoice is outstanding.  *Id.* at 18.

Invoice 5786, dated May 5, 2017, lists a total invoiced amount of $31,968.75 and includes the following five line items under the heading "Namco Pools – April 2017 Namco Marketing Campaign":

> PPC - $5,500.00
> Ongoing SEO - $9,000.00
> Social Media Management - $11,000.00
> Account Management - $6,000.00
> Creative Support for Digital Ads - $468.75

*Id.* at 23.  All of these amounts match or are less than the monthly retainers listed in the Agreement.  *Id.* at 14.  451's accounting records indicate that the entirety of this invoice is outstanding.  *Id.* at 18.

Invoice 5852, dated May 30, 2017, lists a total invoiced amount of $68,711.15 and includes the following six line items under the heading "Namco Pools May 1 - May 23rd Marketing Campaign":

> PPC – (pro-rated May) - $4,080.65
> Ongoing SEO - $18,666.50
> Social Media Management - $6,547.25
> Account Management - $15,975.00
> Creative Support for Digital Ads - $4,141.75
> Web Design & Development (remainder from original budget plus agreed upon additional $9,500)

*Id.* at 24.  The amount billed for "PPC" is less than the amount listed in the Agreement, *id.* at 14, and appears to be a pro-rated fee to cover services provided from May 1 through May 23.  The amounts billed for "Social Media Management" and "Creative Support for Digital Ads" are likewise less than the amounts listed in the Agreement.  *Id.* at 14.  The amounts billed for Account Management and Ongoing SEO exceed the amounts listed in the Agreement by roughly $20,000, *id.*, but as noted above, the Agreement permitted 451 to bill Namco when it had

4

performed work valued in excess of the monthly retainers, based on the billing rates listed in the Agreement.  *Id.* at 6.  The excess amounts for these line items may have resulted from such an occurrence.  Finally, the line item for "Web Design & Development," appears to include the $9,800 payment listed in Paragraph 3.1.a.e of the Agreement, *id.* at 5, plus an additional $9,500 that the invoice indicates the parties "agreed upon," *id*. at 24.  451's accounting records indicate that the entirety of this invoice is outstanding.  *Id.* at 18.

In sum, 451 has provided copies of five outstanding invoices, along with accounting records indicating the outstanding balance for each invoice.  The total outstanding balance according to these records is $180,941.90, which matches the amount listed in the affidavit submitted by 451.  *See id.* at 1.  The amount of most of the line items on these invoices can be verified by reference to the Agreement, and the fact that three of the line items exceed the budgeted amounts does not necessarily indicate a discrepancy, as the Agreement explicitly contemplated that, where 451 provided services valued in excess of the budgeted amount, it could bill Namco at the agreed upon hourly rates.  I thus find that 451 has submitted sufficient evidence to allow the Court to determine the amount owed by Namco for unpaid services "with reasonable certainty."

**B.     Interest**

451 claims that Namco owes interest on overdue balances totaling $43,982.37.  *Id.* at 2.  Paragraph 4 of the Agreement provided that "[i]nterest shall accrue at the lower rate of ten (10%) percent per annum or the maximum rate permitted by law on all overdue balances."  *Id.* at 45-1.  451 has submitted a breakdown of this interest charge by outstanding invoice.  *Id.* at 26.  These calculations appear to accurately reflect a 10% annual interest rate, and the sum matches the amount listed in the affidavit.

**C.     Costs**

451 claims costs totaling $543.67. *Id.* at 2. The Agreement provides that Namco shall pay "all costs and fees (including reasonable attorneys['] fees) incurred in enforcing any terms of this agreement, including the collection of an[y] Overdue Balance." *Id.* at 6. 451 paid a $400 filing fee to initiate this action. *See* ECF No. 1 ("filing fee $400 receipt number 0205-4609304"). 451 has also filed proof of service indicating fees for service of process totaling $132.93. ECF No. 14-4 at 2. Thus, 451's documented costs are $532.93, not $543.67.

**D.     Reasonable Attorneys' Fees**

Finally, 451 seeks reasonable attorneys' fees of $74,974.75. ECF No. 45 at 2. As noted above, the Agreement provides that Namco shall pay "all costs and fees (including reasonable attorneys['] fees) incurred in enforcing any terms of this agreement . . . ." *Id.* at 6. "It is a well-established principle that, "[i]n diversity cases, attorneys' fees are considered substantive and are controlled by state law." *Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 64, 66 (D. Conn. 2000). I previously found that Massachusetts law applies to this case, pursuant to the choice-of-law provision in the Agreement. ECF No. 43 at 7; ECF No. 45-1 at 10. Under Massachusetts law, the determination of reasonable attorneys' fee is a factual determination, which rests largely within the broad discretion of the trial judge. *Bollen v. Kingsmont,* 2000 Mass. App. Div. 56, 57 (2000). The judge is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services. *Fontaine v. Ebtec Corp.,* 415 Mass. 309, 324 (1993).

The factors Massachusetts courts consider in determining the "reasonableness" of attorneys' fees include:

> the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices

6

>   usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured.[2]

*In re Estate of King¸* 455 Mass. 796, 807 (2010) (quoting *Cummings v. Nat'l Shawmut Bank*, 284 Mass. 563, 569 (1934)).  "It is essential, however, for a judge to evaluate the pertinent factors in the context of examining the attorney's description of services actually provided, the hours spent, and the hourly rate charged." *Id.*  The lodestar method for calculating reasonable attorneys' fees is not required by Massachusetts law, however, and "most cases in which the court has endorsed the lodestar method have involved the vindication of rights under statutory law." *WHTR Real Estate Ltd. Partnership v. Venture Distributing, Inc.*, 63 Mass. App. Ct. 229, 236 (2005).

>   451 has submitted an affidavit indicating that Counsel agreed to represent 451 on a one-third contingency basis. *Id.*  As a result of this arrangement, Counsel has not yet been compensated any amount relating to the prosecution of this case. ECF No. 45-2 at 1.  Courts applying Massachusetts law in breach of contract cases have found similar contingency fees to be "reasonable." *See, e.g.*, *Northern Heel Corp. v. Compo Industries, Inc.*, 851 F.2d 456, 477 (1st Cir. 1988) (concluding that the agreed upon 25% contingency fee was "reasonable"). Moreover, the proposed fee award here is not excessive relative to the effort expended by Counsel.  Under the lodestar method, which I am not required to apply under Massachusetts law, but which Massachusetts courts have characterized as sometimes "advantageous," *WHTR Real Estate Ltd. Partnership*, 63 Mass. App. Ct. at 236, and which informs my evaluation of the reasonableness of the proposed fee, courts often calculate the "multiplier" implied by a proposed award.  The multiplier is meant to account for "the risk of litigation, the complexity of the issues,

---

[2] *In re Estate of King* did not involve a contractual provision entitling a party to reasonable attorneys' fees, but courts applying Massachusetts law have held that the same factors apply to such cases. *See, e.g.*, *AccuSoft Corp. v. Palo*, 237 F.3d 31, 61 (1st Cir. 2001) (citing cases).

7

the contingent nature of the engagement, the skill of the attorneys, and other factors," *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004).

A one-third contingency fee in this case amounts to $74,974.75.  451 has submitted an affidavit by Counsel listing the services performed and indicating that Counsel has expended 53.3 hours on this matter and that support staff (labeled "paralegal/administrative") has expended 12.7 hours.  ECF No. 45-2 at 3.  The affidavit further indicates that the hourly rates for Counsel and support staff are $385 and $185 per hour respectively, for a total calculated fee of $22,870.[3] *Id.*  This translates to a multiplier of 3.28.  This multiplier suggests that the proposed award is reasonable.  In other contexts, courts applying the lodestar method have approved multipliers in excess of 4.  *See, e.g.*, *Maley v. Del global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (approving a one-third contingency award in a securities action amounting to a multiplier of 4.65, and noting that this multiplier was "well within the range awarded by courts in this Circuit and courts throughout the country").

Having considered the efforts expended by Counsel to date, the fact that counsel took the case on a contingency fee basis, the fact that counsel has achieved, thus far, a favorable result for his client, and the fact that Defendant Namco appears to be defunct and reportedly lacks any assets, ECF No. 45-2 at 1, which suggests that enforcing a judgment against it will likely entail

---

[3] Based on the Court's familiarity with fee awards in this District and the rates charged in this District by attorneys with similar experience, Counsel's hourly rate is reasonable.  *See, e.g.*, *Alexis v. PMM Enterprises LLC*, 2018 WL 5456491, at *7 (D. Conn. Oct. 29, 2018) (finding a rate of $400 per hour for an attorney to be reasonable); *Heyward v. PRA Recovery, Inc.*, 2011 WL 3134985, at *4 (D. Conn. May 13, 2011) (finding a rate of $350 per hour to be reasonable). It is less clear that a $185 per hour rate for a "paralegal/administrative" is reasonable.  Hourly rates for paralegals in this District generally appear to be less than $150.  *See, e.g.*, *Alexis*, 2018 WL 5456491, at *7 (approving hourly rates of $95 and $150 per hour for two paralegals); *Negron v. Patriot Auto Sales, LLC*, 2019 WL 4463440, at *4 (D. Conn. Sept. 17, 2019) (approving a $150 hourly rate for a paralegal over objection that only a $125 rate was reasonable for paralegals).  Moreover, Counsel has not indicated the experience level of the paralegal or administrative employee who worked on this case.  I need not resolve whether the $185 hourly is reasonable, however, because the total fee for the paralegal's services is only a small portion of Counsel's hourly expenditures, and thus this rate does not affect my conclusion as to the reasonableness of the one-third contingency fee.

substantial further proceedings as well as some risk of non-recovery, I find that a one-third contingency fee is reasonable under the circumstances.

### III. CONCLUSION

To summarize, I find that 451 is entitled to (1) unpaid fees totaling $180,941.90, (2) interest on overdue balances totaling $43,982.37, (3) reasonable attorneys' fees of $74,974.76, and (4) costs of $532.93, for a total of $300,431.96.  451's second motion for default judgment, ECF No. 45, is GRANTED with respect to these amounts.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           May 27, 2020